SXN

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS

### EASTERN DIVIS

SHUNTAY ANTONIO BROWN,

Aggrieved-Plaintiff,

V.

ERIC H. HOLDER, JR.,

MICHEAL K. DESMOND

RICHARD S. KLING

Defendants.

15CV514
JUDGE NORGLE
MAG. JUDGE MARTIN

**RECEIVED**

JAN 2 0 2015

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR COMPENSATORY AND PUNITIVE DAMAGES

1. Shuntay Antonio Brown (Aggrieved-Plaintiff), by and through good faith, brings this COMPLAINT OF VIOLATION OF CONSTITUTIONAL RIGHTS UNDER THE FOURTEENTH AND FIFTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTON AND THE VOTING RIGHTS ACT OF 1965, 42 U.S.C. Section 1973a(a) seeking injunctive and other appropriate relief pursuant to 42 U.S.C. sections 1981, 1983,1985(3), 1986, 1981(a).

2. Shuntay Antonio Brown, (Brown) files this petition in accord with The United States Constitution Supreme Clause Article VI, Clause 2 of the Constitution (This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; . . . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.) Therefore; Shuntay Antonio Brown respectful submit this action for an Mandatory Injunction for this Court under *42 U.S. Code § 1973i - Prohibited acts* to Sanction the Defendants in this case under the provision of 42 U.S. Code § 1973j(c) - Civil and criminal sanctions for conspiring to violate or interfere with secured rights under the Fifteenth Amendment. See Stern v Marshall. Injustice anywhere is a threat to justice everywhere. Martin Luther King Jr., Letter from Birmingham Jail, April 16, 1963 US black civil rights leader & clergyman (1929 - 1968)

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a)(3) & (4), § 2201, and § 2202 for causes of action arising from 42 U.S.C. §

1

1973c and 42 U.S.C. § 1973l.

4. Jurisdiction for Plaintiffs' claims under the Fourteenth and Fifteenth Amendments to the U.S. Constitution is based upon 42 U.S.C. § 1983 and 28 U.S.C. § 1331. Jurisdiction for Plaintiffs' claim for attorney's fees is based on 42 U.S.C. §§ 1973l(e) and 1988.

5. Venue is proper is this District pursuant to 28 USC § 1391(b) (2) - Venue generally. Defendants either live or conduct business in the Northern District of Illinois. The acts of discrimination giving rise to the United States' claims occurred in the Northern District of Illinois. The property that is the subject of the action is located in the Northern District of Illinois.

6. This Complaint is a core proceeding pursuant to 28 USC § 1391 (b) (1).

## THE PARTIES AND RELATED ENTITES

7. **MICHAEL KING DESMOND** (Defendants) is a partner in the law firm of Figliulo & Silverman, P.C. Mr. Desmond concentrates his practice in the areas of commercial litigation, construction law, bankruptcy law, creditors' rights and real estate. Prior to joining the firm in 1998, Mr. Desmond served as an attorney with the United States Department of Justice, Office of the United States Trustee, where he handled a variety of bankruptcy related litigation and complex business reorganizations. Mr. Desmond has experience in handling a variety of complex business matters including partnership disputes, shareholder disputes, construction litigation, bankruptcy reorganizations and bankruptcy litigation. In addition, Mr. Desmond has trial experience in both federal and state court. Mr. Desmond is a Certified Public Accountant, and is currently a member of the adjunct faculty at DePaul University College of Law where he teaches Basic Financial Accounting for Lawyers. Prior to joining the practice of law Mr. Desmond served as the Assistant Controller for Mid America Bank. Mr. Desmond is also member of the Chicago Bar Association where he participates in the Bankruptcy and Reorganizations Committee, and has lectured on various bankruptcy related topics. Defendant, acting in his official capacity as the Chapter 7 Trustee of the United States Bankruptcy Program and is charged with enforcement of the bankruptcy estate.

8. **RICHARD S. KLING** (Defendants) is a Clinical Professor of Law at the Chicago–Kent College of Law in Chicago, Illinois, where he has been teaching since 1981. He teaches evidence, forensic science, and professional responsibility. He has personally tried over 500 jury trials, including 28 capital cases, and currently has a full-time Clinical Criminal practice through the Law Offices of the Chicago-Kent College of Law. Richard Kling is well respected in the Chicago legal community and is regularly featured in Chicago local news to discuss legal news topics ranging from the Rod Blagojevich corruption charges to the Drew Peterson murder trial. Richard Kling received his bachelor's degree from the University of Illinois at Chicago and his law degree in 1971 from Northwestern Law School. After graduating, he joined the Cook County Public Defender's Office, where he was a member of the Special Homicide Task Force. Before

joining the faculty at Chicago-Kent College of Law, he taught trial advocacy at Northwestern Law School, taught an intensive attorney training program at the Illinois Defender's Project, and was a faculty member of the National Institute for Trial Advocacy. Defendant, acting in his official capacity as Public Defender for Shuntay Antonio Brown under the Criminal Justice Act and is charged with the enforcement of Shuntay Antonio Brown's Constitutional rights under the Criminal Justice Act.

9. **ERIC H. HOLDER (Defendants)** is the 82nd Attorney General of the United States on February 3, 2009 by Vice President Joe Biden. President Barack Obama announced his intention to nominate Mr. Holder on December 1, 2008. In 1997, Mr. Holder was named by President Clinton to be the Deputy Attorney General, the first African-American named to that post. Prior to that he served as U.S. Attorney for the District of Columbia. In 1988, Mr. Holder was nominated by President Reagan to become an Associate Judge of the Superior Court of the District of Columbia. Mr. Holder, a native of New York City, attended public schools there, graduating from Stuyvesant High School where he earned a Regents Scholarship. He attended Columbia College, majored in American History, and graduated in 1973. He graduated from Columbia Law School in 1976. While in law school, he clerked at the N.A.A.C.P. Legal Defense Fund and the Department of Justice's Criminal Division. Upon graduating, he moved to Washington and joined the Department of Justice as part of the Attorney General's Honors Program. He was assigned to the newly formed Public Integrity Section in 1976 and was tasked to investigate and prosecute official corruption on the local, state and federal levels. Prior to becoming Attorney General, Mr. Holder was a litigation partner at Covington & Burling LLP in Washington. Defendant, acting in his official capacity as Attorney General of the United States, has his office in the District of Columbia and is charged with the enforcement of the Voting Rights Acts.

10. **Plaintiff SHUNTAY ANTONIO BROWN is unknown.** Shuntay Antonio Brown was convicted by the state of Illinois and the United States Government of a crime under the 13th Amendment and lost all his rights under the 14th Amendment and wasn't able to vote under the 15th Amendment while and during slavery. (See Attachment list A)

## I. INTRODUCTION

11. Dred Scott was a slave. Under Articles III and IV of the constitution, argued The Supreme Court, no one but a citizen of the United States could be a citizen of a state, and that only Congress could confer national citizenship. Taney reached the conclusion that no person descended from an American slave had ever been a citizen for Article III purposes. The Court then held the Missouri Compromise unconstitutional, hoping to end the slavery question once and for all. The Court held, therefore, that Dred Scott and his family were "property" and were not made free simply by virtue of the fact that they were brought into a free territory. President Lincoln signed the emancipation proclamation on January 1, 1863.

12. The nation "WE" the people ratified the fourteenth Amendment in 1868, as commanded by the Supreme Court decision in Dred Scott through democratic means, with its opening words, "All persons born or naturalized in the United States are citizens of the United States and the State wherein they reside." Charles

3

Sumner, a Radical Republican, has emerged as an idealist and a champion for African American civil rights through this turbulent and controversial period of United States History. Sumner joined his fellow Republicans in overriding President Johnson's vetoes and imposed some of their views, though Sumner's most radical ideas were not implemented. Senator Sumner, however, in late 1866 favored impartial suffrage for African Americans, desiring to put in a literacy requirement on all southerners in order to vote. Had Sumner's literacy clause been enacted, only a small portion of blacks would have been able to vote, which would have been far more than Congress or the white southern governments were prepared to enact at that time.

13. When Congress did open the vote to all loyal adult males in the South the following year, Sumner was strongly supportive. He was largely excluded from work on the Thirteenth Amendment, in part because he did not get along with Illinois Senator Lyman Trumbull, who chaired the Senate Judiciary Committee and did much of the work on it. Sumner introduced an alternative amendment that combined the Thirteenth Amendment with elements of the Fourteenth Amendment.

14. Question for declaration: Does the 15th Amendment secure one right to vote as a citizens after and while he or she is being enslave under the 13th Amendment after due process of law under the 14th Amendment for a crime in the United States?? (In Re Agostini v. Felton, 521 U.S. 203 (1997))

15. The 15th Amendment to the Constitution granted African American men the right to vote by declaring that the "right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of race, color, or previous condition of servitude." Although ratified on February 3, 1870, the promise of the 15th Amendment would not be fully realized for almost a century.

16. Shuntay Antonio Brown was or still is a slave according to the 13th Amendment to the constitution. (See *Dred Scott v. Sandford*, 60 U.S. 393 (1857)) In 2013 the Roberts Court gutted a portion of the Voting Rights Act in *Shelby County v. Holder*, deeming unconstitutional the formula used to determine which jurisdictions with a history of racial discrimination in voting must get congressional "pre-clearance" before enacting changes to their election laws. The Supreme Court argued that Section 4 of the Voting Rights Act is unconstitutional. Chief Justice John G. Roberts, Jr. delivered the opinion of the 5-4 majority.

17. The Court held that Section 4 of the Voting Rights Act imposes current burdens that are no longer responsive to the current conditions in the voting districts in question. Although the constraints this section places on specific states made sense in the 1960s and 1970s, they do not any longer and now represent an unconstitutional violation of the power to regulate elections that the Constitution reserves for the states. (See *Dred Scott v. Sandford*, 60 U.S. 393 (1857))

18. The declaration of Shuntay Antonio Brown contained three counts: one, that Shuntay Antonio Brown right to vote under the 15th Amendment was deny in the state of Illinois due to his condition of servitude; two, that his full citizenship rights hasn't been reinstated under the 14th Amendment for a crime in the United States; and three, that he was enslaved under the 13th Amendment and not allow to vote due to current servitude and a Civil and criminal sanctions for defendants

4

conspiring to violate or interfere with secured rights under the Fifteenth Amendment.

## II. BACKGROUND

19. This current complaint for declaratory and injunctive relief is a case brought up from the United States Bankruptcy Court for the Northern District of Illinois. Prior to the institution of the present suit, Moo & Oink Inc., brought an action for monetary freedom of all debt under a chapter 7-bankruptcy case in the United States Bankruptcy Court for the Northern District of Illinois, where there was an order for relief entered in their favor. (In Re: Moo & Oink Inc., 11-34616)

20. On May 26, 2011, Moo & Oink, Inc., filed a seven counts complaint against Chicago Boxed Beef, Connolly, and Dutch Farm (Collectively, Initial Defendants) alleging violation of Federal and Illinois trademark laws, deceptive trade practice, and unfair competition. (In Re: Desmond v. Chicago Boxed Distributor Inc., et al Case # 11 cv 3545)

21. On or about August 24, 2011, the employees' union on the behalf of Shuntay Antonio Brown, United Food and Commercial Workers Union Local 1546 (Petitioning Creditor), and the pension and welfare funds filed an involuntary petition against Moo & Oink Inc., under Title 11 U.S.C. Section 101 et seq., pursuant to Public Law 109-8 Title III section 332(a), 119 Stat. 103, Involuntary Bankruptcy improvement Act of 2005. [In re: Moo & Oink Inc., case no 11-34616 #01 on dkt].

22. On September 30, 2011, the United States Bankruptcy Court of Illinois entered an order for relief and appointed Michael K. Desmond to serve as the chapter Seven Trustee for the estate of Moo & Oink, Inc., A Chapter Seven bankruptcy trustee has standing only to bring claim of the estate, not claim of individual creditor such as Shuntay Antonio Brown. A Trustee is confined to enforcing entitlements of the debtor and has no right to enforce entitlements of a creditor like Shuntay Antonio Brown. (In re: Laverdure v. Laverdure, el al,. 399 B.R. 310; 2008 Bankr. LEXIS 3509)

23. On or around November 7, 2011, Michael K. Desmond not individually but solely in his capacity as chapter 7 trustee of the bankruptcy estate of Moo & Oink, Inc. filed a motion for authority to terminate insurance policies and reject premium finance agreement which included BBHM Management company Worker compensations. This action by the chapter 7 trustee was done to sabotages the employee's benefits and investments. (Case no. 11-34616 doc. 102)

24. On February 17, 2012, the creditor filed a 5- count, 73 page adversary complaint against the debtor initiating the adversary proceeding captioned Brown v. Moo and Oink, Inc., adversary case no. 12-A-00265 (the "First Adversary")

25. On March 22, 2012, the Court, own its own motion *sua sponte,* entered a Memorandum Opinion Dismissing Complaint [Adversary 12-00265, dkt. No.7 (the "First Order")] and an Order Dismissing Adversary Complaint [Adversary 12-00265, dkt. No.8 (the "First Order")].

26. On March 14, 2012, the creditor filed a 6- count, 156 page adversary complaint against 5 defendants initiating the adversary proceeding captioned Brown v. Home of Moo and Oink, LLC, *et al.,* adversary case no. 12-A-00404 (the

5

"Second Adversary").

27. On April 30, 2012, the Court, own its own motion sua sponte, entered a Memorandum Opinion Dismissing Complaint [Adversary 12-00404, dkt. No.7 (the "Second Order")] and an Order Dismissing Adversary Complaint [Adversary 12-00404, dkt. No.6 (the "Second Order")].

28. On March 14, 2012, the creditor filed a 6- count, 156 page adversary complaint against 5 defendants initiating the adversary proceeding captioned Brown v. United Food and Commercial Workers Union Local 1546, et al., adversary case no. 12-A-00406 (the "Third Adversary").

29. On April 19, 2012, the Court, own its own motion sua sponte, entered a Memorandum Opinion Dismissing Complaint [Adversary 12-00406, dkt. No.6 (the "Third Order")] and an Order Dismissing Adversary Complaint [Adversary 12-00406, dkt. No.7 (the "Third Order")].

30. On March 14, 2012, the creditor filed a 6- count, 166 page adversary complaint against 5 defendants initiating the adversary proceeding captioned Brown v. Ms. Mollye's, et al., adversary case no. 12-A-00410 (the "Fourth Adversary").

31. On April 17, 2012, the Court, own its own motion sua sponte, entered a Memorandum Opinion Dismissing Complaint [Adversary 12-00410, dkt. No.7 (the "Fourth Order")] and an Order Dismissing Adversary Complaint [Adversary 12-00410, dkt. No.8 (the "Fourth Order")].

32. On March 14, 2012, the creditor filed a 6- count, 173 page adversary complaint against 5 defendants initiating the adversary proceeding captioned Brown v. Calumet Meat Company, et al., adversary case no. 12-A-00414 (the "Fifth Adversary").

33. On April 20, 2012, the Court, own its own motion sua sponte, entered a Memorandum Opinion Dismissing Complaint [Adversary 12-00414, dkt. No.7 (the "Fifth Order")] and an Order Dismissing Adversary Complaint [Adversary 12-00414, dkt. No.6 (the "Fifth Order")].

34. On March 22, 2012, the creditor filed a 7- count, 43 page adversary complaint against 5 defendants initiating the adversary proceeding captioned Shuntay Antonio Brown, as creditor of Moo & Oink, Inc. v. Paradise Properties, LLC, et al., adversary case no. 12-A-00473 (the "Sixth Adversary").

35. On April 30, 2012, the Court, own its own motion sua sponte, entered a Memorandum Opinion Dismissing Complaint [Adversary 12-00473, dkt. No.4 (the "Sixth Order")] and an Order Dismissing Adversary Complaint [Adversary 12-00473, dkt. No.5 (the "Sixth Order")].

36. On March 22, 2012, the creditor filed a 6- count, 43 page adversary complaint against 5 law firms initiating the adversary proceeding captioned Brown v. Adelman Law Office, P.C., et al., adversary case no. 12-A-00474 (the "Seventh Adversary").

37. On April 30, 2012, the Court, own its own motion sua sponte, entered a Memorandum Opinion Dismissing Complaint [Adversary 12-00474, dkt. No.7 (the "Seventh Order")] and an Order Dismissing Adversary Complaint [Adversary 12-00474, dkt. No.8 (the "Seventh Order")].

38. On April 30, 2012 the creditor filed an adversary complaint in the Bankruptcy Case initiating the adversary proceeding captioned Brown v. Moo and

Oink, Inc., et al., Adversary case no. 12-A-00724 (the "Eighth Adversary").

39. On June 19,2012, Michael K. Desmond not individually but solely in his capacity as chapter 7 trustee of the bankruptcy estate of Moo & Oink, Inc. filed a motion for sanction and an order for rule to show cause why Shuntay A. Brown should not be held in contempt of court [Adversary 12-00724, dkt. No.6 (the "Motion")]. (See *Dred Scott v. Sandford*, 60 U.S. 393 (1857))

40. On July 30, 2012, the Court, Dismissed Adversary Complaint [Adversary 12-00724, dkt. No.35 (the "Eighth Order")] and placing a filing restrictions on Mr. Shuntay A. Brown pursuant Michael K. Desmond not individually but solely in his capacity as chapter 7 trustee of the bankruptcy estate of Moo & Oink, Inc., motion for sanction and an order for rule to show cause why Shuntay A. Brown should not be held in contempt of court [Adversary 12-00724, dkt. No.6 (the "Motion")] (See *Dred Scott v. Sandford*, 60 U.S. 393 (1857))

41. In the eighth adversary proceeding [Adversary 12-00724, dkt. No.6] Mr. Brown does pleas facts showing that he is a child support creditor or representative as defined in 11 USC section 101 (12A) or section 523(a)(5) [Adversary 12-00724, dkt. No.01, Paragraphs 39-47]. These fact was over looked pursuant to Michael K. Desmond not individually but solely in his capacity as chapter 7 trustee of the bankruptcy estate of Moo & Oink, Inc., motion for sanction and an order for rule to show cause why Shuntay A. Brown should not be held in contempt of court [Adversary 12-00724, dkt. No.6 (the "Motion")] (See *Dred Scott v. Sandford*, 60 U.S. 393 (1857))

42. On October 17, 2013, according to the Special September 2012 Grand Jury, Plaintiff Shuntay Antonio Brown was charged with eight counts of making false statement under penalty of perjury in the United States Bankruptcy Court in the Northern District of Illinois, in violation of Title 18 United States Code section 152(3) pursuant to Title 18 United States Code, section 332(a). It can be assume that Michael K. Desmond, was the attorney to present charges to the Grand Jury for an indictment; nevertheless there is no difficulty in including corporation with in designation "person" even in a criminal act. The inability to punish by imprisonment doesn't prevent an indictment against a corporation. (In Re: United States v. Union Supply Co. (1909) 215 US 50, 54 L ED 87, 30 S Ct 15)

43. On a writ of error to the District Court of the State of Illinois, the motion under Rule 60 was denied due to lack of jurisdiction, where it was stated on record via Michael K Desmond and Jeff Harris that Mr. Brown was convicted of a crime and lack jurisdiction to sue as detail in the fourteenth Amendment under due process of law Mr. Brown is a slave without any rights and protection under the law. "And the said Michael K. Desmond, in his own proper person, has come and says that this court ought not to have or take further cognizance of the action aforesaid, because he says that said cause of action and each and every one of them (if any such have accrued to the said Shuntay Antonio Brown) accrued to the said Shuntay Antonio Brown out of the jurisdiction of this court, and exclusively within the jurisdiction of the courts of the State of Illinois, for that, to-wit: the said plaintiff, Shuntay Antonio Brown, is not a citizen of the State of Illinois or the United States because of the declaration he signed in the bankruptcy court under perjury, he is a negro of African descent; his ancestors were of pure African blood,

7

and were brought into this country and sold as negro slaves, and this the said Michael K. Desmond is ready to verify under the fourteenth Amendment. Under the 13th Amendment Mr. Shuntay Antonio Brown is a Negro slave belonging to the United States Government and the State of Illinois. (In re: Desmond v. Chicago Boxed Beef Distributors. Case no. 11 cv 03545 doc. # 174, 187, and 192) (In Re: *Dred Scott v. Sandford*, 60 U.S. 393 (1857))

44. ACCORDING TO THE AMENDMENT XIII: PROHIBITION OF SLAVERY. Section 1: Either slavery nor involuntary servitude, *except* as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction. Section 2: Congress shall have power to enforce this article by appropriate legislation.

45. What is a Constitution? It is the form of government, delineated by the mighty hand of the people, in which certain first principles of fundamental laws are established. The Constitution is certain and fixed; it contains the permanent will of the people, and is the supreme law of the land; it is paramount to the power of the Legislature, and can be revoked or altered only by the authority that made it. The life-giving principle and the death-doing stroke must proceed from the same hand. What are Legislatures? Creatures of the Constitution; they owe their existence to the Constitution: they derive their powers from the Constitution: It is their commission; and, therefore, all their acts must be conformable to it, or else they will be void. The Constitution is the work or will of the People themselves, in their original, sovereign, and unlimited capacity. Law is the work or will of the Legislature in their derivative and subordinate capacity. The one is the work of the Creator, and the other of the Creature. The Constitution fixes limits to the exercise of legislative authority, and prescribes the orbit within which it must move. In short, gentlemen, the Constitution is the sun of the political system, around which all Legislative, Executive and Judicial bodies must revolve. Whatever may be the case in other countries, yet in this there can be no doubt, that every act of the Legislature, repugnant to the Constitution, as absolutely void." VanHorne's Lessee v. Dorrance, 2 U.S. 304, 2 Dall. 304 (1795)

### III. ANALYSIS
#### A. The Voting Rights Act of 1965

46. President Johnson signed the resulting legislation into law on August 6, 1965. Section 2 of the Act, which closely followed the language of the 15th amendment, applied a nationwide prohibition against the denial or abridgment of the right to vote on the literacy tests on a nationwide basis. Among its other provisions, the Act contained special enforcement provisions targeted at those areas of the country where Congress believed the potential for discrimination to be the greatest. Under Section 5, jurisdictions covered by these special provisions could not implement any change affecting voting until the Attorney General or the United States District Court for the District of Columbia determined that the change did not have a discriminatory purpose and would not have a discriminatory effect. In addition, the Attorney General could designate a county covered by these special provisions for the appointment of a federal examiner to review the qualifications of

persons who wanted to register to vote. Further, in those counties where a federal examiner was serving, the Attorney General could request that federal observers monitor activities within the county's polling place.

47. The Voting Rights Act had not included a provision prohibiting poll taxes, but had directed the Attorney General to challenge its use. In Harper v. Virginia State Board of Elections, 383 U.S. 663 (1966), the Supreme Court held Virginia's poll tax to be unconstitutional under the 14th Amendment. Between 1965 and 1969 the Supreme Court also issued several key decisions upholding the constitutionality of Section 5 and affirming the broad range of voting practices that required Section 5 review. As the Supreme Court put it in its 1966 decision upholding the constitutionality of the Act: Congress had found that case-by-case litigation was inadequate to combat wide-spread and persistent discrimination in voting, because of the inordinate amount of time and energy required to overcome the obstructionist tactics invariably encountered in these lawsuits. After enduring nearly a century of systematic resistance to the Fifteenth Amendment, Congress might well decide to shift the advantage of time and inertia from the perpetrators of the evil to its victims. South Carolina v. Katzenbach, 383 U.S. 301, 327-28 (1966).

48. Shuntay A. Brown ask this Court to confirm his citizenship and to reinstate his right to vote under the 15th Amendment because it's unconstitutional to remove such right under the 14th Amendment. "Once jurisdiction is challenged, the court cannot proceed when it clearly appears that the court lacks jurisdiction, the court has no authority to reach merits, but, rather, should dismiss the action." Melo v. US, 505 F2d 1026. The State of Illinois, the United States Government and the City and local government lack proper Jurisdiction to enslave Mr. Brown and revoke his right to vote because of a crime under the 13th Amendment. The Illinois Supreme Court held that if a court "could not hear the matter upon the jurisdictional paper presented, its finding that it had the power can add nothing to its authority, - it had no authority to make that finding." The People v. Brewer, 128 Ill. 472, 483 (1928). Many people are confused and think judges have immunity. Courts have repeatedly ruled that judges have no immunity for their criminal acts. (O'Shea v. Littleton, 414 U.S. 488, 503 (1974).)

49. The Seventh Circuit Court of Appeals held that the Circuit Court of Cook County is a criminal enterprise. U.S. v. Murphy, 768 F.2d 1518, 1531 (7th Cir. 1985). The United States Supreme Court recently acknowledged the judicial corruption in Cook County, when it stated that Judge "Maloney was one of many dishonest judges exposed and convicted through 'Operation Greylord', a labyrinthine federal investigation of judicial corruption in Chicago". Bracey v. Gramley, 519 U.S. 1074, 117 S.Ct. 726 (1997). There has been no finding that the Circuit Court of Cook County is no longer a criminal enterprise, nor that judicial corruption no longer exists in Chicago. Since judges who do not report the criminal activities of other judges become principals in the criminal activity, 18 U.S.C. Section 2, 3 & 4, and since no judges have reported the criminal activity of the judges who have been convicted, the other judges are as guilty as the convicted judges. The criminal activities that the Federal Courts found in the Circuit Court of Cook County still exist, and are today under the care, custody and control of Judge Greylord III (Chief Judge Timothy C. Evans). The Circuit Court of Cook County

9

remains a criminal enterprise founded on slavery under the 13th Amendment however it remains questionable if slavery is constitutional.

50. Mr. Brown as a slave under the United States Government didn't get a right to vote in any election according to the 15th Amendment of the Constitution due to their servitude.

51. It has been a long time coming. Laws that deny ex-offenders/slaves the right to vote have a long and dark history. Although felons/slaves were prevented from voting in most states from the very beginning of the republic, after the Civil War, these laws were greatly expanded in the South and virtually all felons in those states were black. The South's loss of the Civil War in 1865 presented former slave owners with dual dilemmas. Their captive labor supply had been liberated, and those formerly involuntary workers were going to be allowed to vote. In the words of one former slave, "bottom rail on the top." Soon after the withdrawal of federal troops in 1877, however, white entrepreneurs of the South solved both problems with two linked concepts: convict leasing and felon disenfranchisement.

52. First, massive numbers of African-Americans were arrested for little or no reason and sent to work in mines, mills and fields, creating an almost limitless supply of effectively free labor. Under newly enhanced (and in some cases newly created) laws, these ex-felons/slaves were then forever after denied the right to vote. This process also planted in the American psyche a viciously tenacious stereotype of African-American criminality. Douglas Blackmon's Pulitzer Prize–winning book "Slavery by Another Name" describes these circumstances in excruciating detail: The depraved system has made enduring marks on today's criminal justice landscape, in the form of felon disenfranchisement laws and racially disparate arrest, conviction and sentencing practices. Michelle Alexander, in her book "The New Jim Crow," compares these laws and today's mass incarceration of inmates of color to historical injustices.

53. According to the 13th Amendment being sent to prison/slavery is a punishment, and when someone commits an act that lands them there, they lose their freedom and democratic rights pursuant to the 14th Amendment due process of law. The construct of a criminal spending time in prison sets guidelines for society, showing American citizens that when you commit a crime, you lose some of your freedom under the 14th amendment due process of law. You are no longer a citizen; therefore you become a legal Slave under the 13th amendment. You may be a child of God under the United States motto: In God we trust but you are still a slave.

54. The PENITENTIARY is THE NEW PLANTATION according to the 13th Amendment. The Supreme Court ruled that persons of African descent could not be, nor were ever intended to be, citizens under the U.S. Constitution, and thus the Movant (Shuntay A. Brown) is without legal standing to file a suit. The framers of the Constitution, Taney famously wrote, believed that blacks "had no rights which the white man was bound to respect; and that the Negro might justly and lawfully be reduced to slavery for his benefit. He was bought and sold and treated as an ordinary article of merchandise and traffic, whenever profit could be made by it." (In Re: **Dred Scott v. Sandford**, 60 U.S. 393 (1857))

55. The Illinois Supreme Court has held that "if the magistrate has not such jurisdiction, then he and those who advise and act with him, or execute his process,

are trespassers." *Von Kettler et al. v. Johnson*, 57 Ill. 109 (1870) Under Federal law which is applicable to all states, the U.S. Supreme Court stated that if a court is "without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification; and all persons concerned in executing such judgments or sentences, are considered, in law, as trespassers." *Elliot v. Piersol*, 1 Pet. 328, 340, 26 U.S. 328, 340 (1828) The Illinois Supreme Court held that if a court "could not hear the matter upon the jurisdictional paper presented, its finding that it had the power can add nothing to its authority, - it had no authority to make that finding." *The People v. Brewer*, 128 Ill. 472, 483 (1928). The U.S. Supreme Court, in *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974) stated that "when a state officer acts under a state law in a manner violate of the Federal Constitution, he "comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected <u>in his person</u> to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." [Emphasis supplied in original]. By law, a judge is a state officer. The judge then acts not as a judge, but as a private individual (in his person). The U.S. Supreme Court has stated that "No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it." Cooper v. Aaron, 358 U.S. 1, 78 S. Ct. 1401 (1958).

56. Evidence shows that Millions of Americans are being cheated out of their right to vote according to the 15th amendment. For example, if Shuntay Antonio Brown as a felon/slave was to leave the state of Illinois his right to vote as a felon/slave will always be challenge by many states that don't enforce the rights of felons/slaves to vote under the 15th AMENDMENT TO THE UNITED STATES CONSTITUTION. It is apparent that the Court is concerned with the extent to which any individuals/slaves are burdened, even if only a few are burdened. The issue is whether a particular slaves or potential slaves, or group of slaves, have had their rights severely burdened. See e.g., Williams v. Rhodes, 393 U.S. 23, 24, 30 (1968) (discussing the fact that state ballot access law places a burden on the "right of qualified voters . . . to cast their votes effectively" even though the voters might belong to a party "which has a very small number of members."); Mixon v. Ohio, 193 F.3d 389, 402 (6th Cir 1999) ("If the challenged legislation grants the right to vote to some residents while denying the vote to others, then we must subject the legislation to strict scrutiny and determine whether the exclusions are necessary to promote a compelling state interest.").

57. Attorney General Eric Holder recently gave a speech at Georgetown University, during which he discussed the voting rights that are given to or more importantly, withheld from convicted felons/slaves. Determining the voting status of felons/slaves falls to each individual state, which has led to diverse legislation. Maine and Vermont allow felons/slaves to vote during their prison sentence, while 11 states forbid convicted felons/slaves from voting ever again. The remaining states fall somewhere in between these opposite rulings. (In Re: (18 U.S.C. § 201) and the "criminal conflict of interest statutes" (18 U.S.C. §§ 202-209) are codified

in 18 U.S.C. Chapter 11. These statutes were enacted in 1962 by Public Law 87-849 as part of a major revision of the then-existing conflict of interest laws.)

58. Holder urged states, especially the 11 that ban felons/slaves from voting indefinitely, to restructure their laws concerning this issue because such legislation is outdated and counterproductive according to the 15th Amendment. However Holder hasn't filed any legal suit or to protect the rights of millions of slaves in America, Those who have been convicted of a felony deserve to suffer a punishment for their actions, but such punishment should not extend to being stripped of their right to vote under the 15th Amendment which states; Section 1: The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of race, color, or *previous condition of servitude.* Section 2. The Congress shall have power to enforce this article by appropriate legislation. (In Re: Shelby County, Ala. v. Holder, 133 S. Ct. 2612 - Supreme Court 2013)

59. Many felons/slaves are reformed and rehabilitated throughout their time in prison/slavery, becoming reputable citizens and leaving their life of crime behind them. It is not fair to mandate that those people cannot have a say in who governs them simply because of a former lifestyle they no longer adhere to. Holder said felony/slavery voting laws apply to a significant portion of African-Americans, causing them to be under-represented in many state elections. The felony/slavery voting laws were employed by several southern states in the post-Civil-War era in order to keep African-Americans from participating in elections. Lingering racism and abhorrent prejudice led to many African-Americans being intentionally and wrongfully convicted during this time. A law that was created in part to further a racist agenda has no place in our progressive society. Rather than protecting citizens' liberties, felony-voting laws restrict them. The right to vote helps to make up the foundation of our democratic government, ensuring the people as a whole maintain their sovereignty in political affairs. To disenfranchise millions of American citizens is a grave misstep by our government. It disproportionately affects the poor, disabled and elderly and it "erect[s] real obstacle[s] to voting." Harman v. Forssenius, 380 U.S. 528, 541 (1965). Thus, ultimately, "the constitutional question is whether the restriction and resulting exclusion are reasonable given the interest the restriction serves." Griffin v. Roupas, 385 F.3d 1128, 1130 (7th Cir. 2004), cert. denied, 544 U.S. 923 (2005)

60. Those serving prison time for felonies don't deserve to be stripped of their suffrage because they have temporarily been removed from society due to serious wrongdoing. Once they have been reinstated into society, they should receive the basic rights of normal citizens—including the right to vote according the 15th amendment. Shuntay Antonio brown didn't deserve to be stripped of his right to vote due to a competency examination. (In Re: Brown v. United States Case no. 13-00831 doc. # 26)

61. On February 19, 2014, the Honorable James B. Zagel entered an order granted Attorney Gary W. Adair's motion to withdraw his appearance on the behalf of Shuntay Antonio Brown 30 days before the City of Chicago Primary Election held on March 18, 2014. The Court also signed an order for the United States Government's motion for a Competency Examination which includes transportation

12

to and from the place of examination and for a commitment of a thirty day examination pursuant to 18 U.S.C. section 4241(b) and 18 U.S.C section 3161(h)(1)(H) that provides a defendant the full panoply of procedural safeguards before a court could subject one to commitment for an extended. (In Re: United States of America v. White 887 F.2d 705; 1989 U.S. App. LEXIS 15556)

62. The 15th Amendment provides a safeguard to Mr. Brown right to vote regardless of *pervious condition of servitude* however Mr. Shuntay Antonio Brown right to vote was denied due to pervious condition of slavery in the United States of America. Whoever shall deprive or attempt to deprive any person of any right secured by section 1973, 1973a, 1973b, 1973c, or 1973h of this title or shall violate section 1973i (a) of this title, shall be fined not more than $5,000, or imprisoned not more than five years, or both. (In Re: 42 U.S. Code § 1973j(a) - Civil and criminal sanctions)

63. On May 06, 2014, Jessica Romero, (The United States Attorney) shared with the court that the United States Marshals were unable to timely transport Defendant Shuntay Antonio Brown to MCC for a examination to be conducted by an essential witness to determine defendant competency pursuant to 18 U.S.C. Section 4241(a) and (b) and also 18 U.S.C. 3161(h)(1)(F). The United States Marshal was also unable to transport Mr. Shuntay Antonio Brown to his local poll to vote pursuant to the 15th Amendment. (In Re: United States v. Ferguson 574 F. Supp. 2d 11; 2008 U.S. Dist. LEXIS 67076)

64. On February 19, 2014, Attorney Richard S. Kling filed his appearance for defendant Shuntay Antonio Brown on the behalf of the Federal Defender Program pursuant to the Criminal Justice Act of 1964 30 days before the City of Chicago Primary Election held on March 18, 2014. (In Re: United States v. Brown Case # 13 cr 00831 Doc. # 31)

65. If a former felon/slave commits or is charges with a crime and is put into prison/slavery, then his or her right to vote cannot be revoked for any given time according to the 15th Amendment; however Shuntay Antonio Brown was not given the right to vote. It is up to our justice system to determine the proper punishment for a felony rather than a state government inflicting a penalty of permanent disenfranchisement upon convicted felons/slaves. (In Re: Shelby County, Ala. v. Holder, 133 S. Ct. 2612 - Supreme Court 2013)

66. On March 14, 2014, Richard S. Kling requested the status hearing set for 3/18/14 to be stricken and reset to 3/20/14 at 9:15 a.m. to prevent Shuntay Antonio Brown the right to vote in the City of Chicago primary Election on 3/18/14 according to the 15th Amendment. (In Re: United States v. Brown Case # 13 cr 00831 Doc. # 32)

67. On March 20, 2014, Attorney Richard S. Kling on oral motion requested the United States Marshals Services to move defendant Brown to the Metropolitan Correctional Center so that a mental examination can be performed on defendant Brown thirty days after the Honorable James B. Zagel entered an order for defendant to be released pursuant to the Government's motion for a Competency Examination; however Richard S. Kling didn't request for defendant Brown to be move to a local voting poll to exercise his rights under the 15th Amendment (In Re: United States v. Brown Case # 13 cr 00831 Doc. # 30)

13

68. The United States is a place where people can reinvent themselves over time, regardless of their past, and a single action should not prevent a citizen/slave from retaining the power to be heard in our society. Under *Dred Scott v. Sandford*, 60 U.S. 393 (1857)) it is questionable rather or not if Mr. Shuntay Antonio Brown is a citizen, slave or immigrate under the Constitution according to the 13th and 14th Amendment. (In Re: Shelby County, Ala. v. Holder, 133 S. Ct. 2612 - Supreme Court 2013)

69. Any judge who does not comply with his oath to the Constitution of the United States wars against that Constitution and engages in acts in violation of the Supreme Law of the Land. The judge is engaged in acts of treason. Having taken at least two, if not three, oaths of office to support the Constitution of the United States, and the Constitution of the State of Illinois, any judge who has acted in violation of the Constitution is engaged in an act or acts of treason. Whenever a judge acts where he/she does not have jurisdiction to act, the judge is engaged in an act or acts of treason. <u>U.S. v. Will</u>, 449 U.S. 200, 216, 101 S.Ct. 471, 66 L.Ed.2d 392, 406 (1980); <u>Cohens v. Virginia</u>, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed 257 (1821)

## B. Reassuring Our Salvation United States v. Reese 92 U.S. 214 (1875)

70. The case of US v. Reese was the first voting rights case after the Fifteenth Amendment was established. This case was basically another act for civil rights to allow African Americans to have more opportunities and more freedom. The US v. Reese case was led by both the fourteenth and the fifteenth amendment. The problem with this case was that it was not equal for African Americans. The other problem with this case was that they denied an African American the right to vote. It is clear that these two problems are going against the two amendments. The Case of US V. Reese took place during the October term in 1876.

71. Attorney and General, Mr. Williams and General Phillips of the US side argued the case. The defendants were Mr. Henry Stanbery and Mr. B. F. Buckner. The two men served as inspectors for a municipal election in the state of Kentucky. They were charged with refusing to receive and count the vote of a black man, William Garner.

72. The fifteenth amendment states that the right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of race, color, or previous condition of servitude. Many people agreed that by denying William Garner to vote in their facility, it undermined the African Americans and went against the fifteenth amendment. Unfortunately, the Supreme Court interpreted it as being just a right. Although now allowing William Garner the chance to vote, the Fifteenth amendment did not state any punishment for the crime. The court ruled for the defendants and the case was sentenced.

73. The case of US v. Reese was a very important case, but things did not change as much as people planned. For instance, in the case of Plessy v. Ferguson, a white man who had black ancestors was refused a seat on a train because of his lineage. Homer Plessy knew that it was wrong and took the men to court. His argument was based upon the fourteenth amendment, that both whites and blacks

are equal protected. The court ruled in favor of the defendants saying that being separated does not mean he isn't equal. The outcome of these cases didn't change until the case of Brown v. Board where a black man was the one to win the ruling of the court.

74. This is important to day because African Americans have every right to vote. If we weren't allowed to vote, the outcome of things today would probably be different. So different that Obama may have not been our president. The case of US v. Reese is important because we no longer have slip ups like that. I'm just happy to know that I can walk into a poll booth as a slave and/or citizen, and my vote will be accepted according to the 15th Amendment. Nevertheless I wasn't able to vote during enslavement in the United States of America.

## FIRST CAUSE OF ACTION VOTING RIGHTS ACT

75. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 74 and incorporate them herein by reference.

76. Section 2 of the Voting Rights Act prohibits Defendants from imposing any "voting qualification or prerequisite to voting or standard, practice, or procedure" which results in a denial or abridgement of the right to vote on account of race or color. 42 U.S.C. § 1973(a). As a matter of official policy and actual practice, Defendants has refuse to established polling places for federal, state, county, and local district elections within the prison system of the United States of America while simultaneously asserting that they cannot administer or regulate state or federal elections in the Prison System to ensure compliance with federal and state elections laws.

77. The totality of circumstances of Defendants' actions, as described above, has resulted in non-convicted and slave voters having "less opportunity than other members of the electorate to participate in the political process and to elect the representatives of their choice." 42 U.S.C. § 1973(b). Similarly, the official policy and actual practice of establishing polling places where Defendants contend state and federal elections laws cannot be administered is a permanent and structural barrier that dilutes the ability to elect representatives of non-convicted members' choice.

78. Unless enjoined by this Court, Defendants will continue to violate Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, by following standards, practices, or procedures that deny non-convicted and slaves member voters the opportunity to participate effectively in the political process on an equal basis with other members of the electorate.

79. As an incident of bringing and maintaining this action, plaintiff have incurred and will incur litigation costs and are entitled under 42 U.S.C. § 1973l(e) to an award of reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION FOURTEENTH AMENDMENT - EQUAL PROTECTION

80. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 74 and

incorporate them herein by reference.

81. The Fifteenth Amendment to the United States Constitution provides, in relevant part, that "[t]he right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude," US. Const. amend. XV, § 1, and grants to Congress the "power to enforce this article by appropriate legislation," *id.* § 2.

82. Congress enacted the Voting Rights Act of 1965, Pub. L. No. 89-110, 79 Stat. 437 (1965), to enforce the substantive guarantee of the Fifteenth Amendment.

83. Section 2 of the VRA enforced the substantive guarantee of the Fifteenth Amendment by outlawing any "voting qualification or prerequisite to voting, or standard, practice, or procedure ... imposed or applied ... to deny or abridge the right of any citizen of the United States to vote on account of race or color." *!d.* § 2, 79 Stat. at 437. This prohibition applied nationwide. *Id.* 10. Other provisions of the statute applied only to certain jurisdictions pursuant to a geographic "coverage" formula established by the VRA.

84. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits Defendants from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The right to vote is a fundamental right.

85. Defendants have disparately applied election laws and other unjust laws to convicted slaves and non-convicted citizens/slaves. In addition, Defendants have disparately regulated off-Prison and in Prison polling places for federal, state, local, and district elections. This disparate treatment deprives the named Plaintiff of his rights secured by the Fourteenth Amendment.

86. By not establishing polling places in the prisons where elections can be regulated and/or election laws administered, Defendants have created irrational and arbitrary voting classes. By not allowing voting at polling places where elections can be regulated and election laws can be applied disadvantages all voters/slaves at those polling places (jail), and within the jurisdiction, regardless of race. This disparate treatment deprives the named Plaintiff and all Slaves, including non-convicted Slaves waiting on trial, of their rights secured by the Fourteenth Amendment.

87. State and Local Defendants/Attorneys have a duty to investigate allege violations of the election/constitution laws under the 15th Amendment. On information and belief, State and Local Defendants/Attorney investigate alleged violations occurring at polling places throughout the State except on the Reservation/Prison. This disparate treatment deprives the named Plaintiff and all Slaves and non-convicted residents, including convicted members, of their rights secured by the Fourteenth Amendment.

88. Unless enjoined by this Court, Defendants/Attorneys will continue to violate the Fourteenth Amendment by participation in actions or omissions that deny slaves and non-convicted voters an opportunity to participate in the political process on an equal basis with other members of the electorate. (In Re: 18 U.S.C. § 201) and the "criminal conflict of interest statutes" (18 U.S.C. §§ 202-209) are codified in 18 U.S.C. Chapter 11. These statutes were enacted in 1962 by Public Law 87-849 as part of a major revision of the then-existing conflict of interest laws.)

## THIRD CAUSE OF ACTION GUARANTEE CLAUSE

89. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 72 and incorporate them herein by reference.

90. The Guarantee Clause to the United States Constitution provides that "[t]he United States shall guarantee to every state in this union a republican form of government...." U.S. CONST. art. IV, § 4

91. Inasmuch as the preservation of a republican form of government necessarily requires protecting against corruption of the voting process, Defendants (despite their representations to the contrary) have the authority and duty (oath) to administer and regulate elections (constitution) in the Prison System.

92. Congress found "that the number of African-Americans who are registered and who turn out to cast ballots has increased significantly over the last 40 years, particularly since 1982. In some circumstances, minorities register to vote and cast ballots at levels that surpass those of white voters." H.R. Rep. No. 109-478, at 12 (2006).

## FOURTH CAUSE OF ACTION 42 U.S.C. §§ 1983 and 1988

93. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 75 and incorporate them herein by reference.

94. The Civil Rights of 1871, 42 U.S.C. § 1983, provides that any person acting under color of state law who deprives a citizen of the United States of any federal right, privilege or immunity "shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."
Defendants Eric Holder, Richard S. Kling, and Michael K. Desmond (hereinafter "Defendants"), in their official capacities are persons under 42 U.S.C. § 1983 for purposes of declaratory and injunctive relief. (In Re: 42 U.S. Code § 1973j(c) Conspiring to violate or interfere with secured rights: Whoever conspires to violate the provisions of subsection (a) or (b) of this section, or interferes with any right secured by section 1973, 1973a, 1973b, 1973c, 1973h, or 1973i (a) of this title shall be fined not more than $5,000, or imprisoned not more than five years, or both. - Civil and criminal sanctions)

95. All State and Local Defendants' actions complained of herein have been taken under color of state law.

96. State and Local Defendants have violated plaintiff's civil rights under the Fourteenth Amendment and the Guarantee Clause as set forth above and as protected by 42 U.S.C. § 1983.

97. Plaintiff is entitled to a declaration that their civil rights have been violated and to an injunction prohibiting defendants from continued violation of Plaintiff's civil rights.

98. As an incident of bringing and maintaining this action, plaintiffs have incurred and will incur litigation costs and are entitled under 42 U.S.C. § 1988 to an award of reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully pray that the Court:

17

1.     Declare that Defendants have violated Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, and the 15th and 14th Amendment and Guarantee Clause of the United States Constitution. In addition, declare that State and Local Defendants have violated 42 U.S.C. § 1983;

2.     Preliminarily and permanently enjoin Defendants, their agents, and successors in office, and all persons acting in concert with them, from implementing practices and procedures which have the result of denying non-convicted slaves an opportunity to participate effectively in the political process on an equal basis with other members of the electorate, or from disparately applying election laws to convicted slaves and non-convicted slaves and disparately regulating polling places on-Reservation/prison and off-Reservation/prison;

3.     Declare that Defendants have the authority and duty to administer or regulate elections in the Prison system as declare in the preamble, "*We the people of the United States, in order to form a more perfect union, establish justice, insure domestic tranquility, provide for the common defense, promote the general welfare, and secure the blessings of liberty to ourselves and our posterity, do ordain and establish this Constitution for the United States of America.*"

4.     Award Plaintiff reasonable costs and attorney's fees under 42 U.S.C. § 1973l(e) and 42 U.S.C. § 1988; and

5.     Award such further equitable and other relief as the Court deems just and proper to ensure that elections in the prison system are held in a fair and lawful manner.

Respectfully submitted, this the 20th day of January 2014.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Petition was served on all parties by deposit in the United States Court ECF System and United States mail and Email provider on or before December 17, 2014.

December 09, 2014

Shuntay Antonio Brown
1458 South Canal Street
Chicago, IL 60607
312-492-9410

brownshuntay@yahoo.com

18